IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC TUCKER, Y14481, <br><br>      Petitioner, <br><br> v. <br><br> GLEN AUSTIN, Acting Warden, <br>  Graham Correctional Center, <br><br>      Respondent. | Case No. 20-CV-585-SPM |

# MEMORANDUM AND ORDER

**McGlynn, District Judge:**

Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Eric Tucker ("Tucker"). Within the petition, Tucker asserts claims of ineffective assistance of counsel and violations of his speedy trial rights (*Id.*). Specifically, Tucker asserts the following three arguments: (1) Trial counsel rendered ineffective assistance [of counsel] in his case; (2) He received ineffective assistance of appellate counsel; and (3) His constitutional speedy trial rights were violated (*Id.*).

Respondent Glen Austin ("Austin") filed a response, along with numerous exhibits (Docs. 15, 16). For the reasons discussed below, the Court finds that Tucker's §2254 Petition is DENIED.

**RELEVANT FACTS AND PROCEDURAL HISTORY**[1]

**I.     Original Action**

The defendant was indicted on July 16, 2010 for the double homicide of Darnell Turner and Araybia Moore in case number 10-CF-598; however, the State dismissed those charges on February 24, 2014, with leave to reinstate.

While in custody, the case was delayed on several occasions including when he obtained new counsel and when a new ASA and trial judge were assigned. A firm trial date was set for February 24, 2014, giving both sides time to analyze the voluminous discovery and hours of videotaped evidence. As the trial date neared, another ASA was assigned and then 10 days before trial, veteran ASA Jon Allard was assigned as second chair.

On the morning of trial, February 24, 2014, the State moved to dismiss the case with leave to reinstate. Before the court ruled, Tucker filed a motion for speedy trial pursuant to 725 ILCS 5/103-5 (West 2012). The Court issued an Order dismissing the charges with leave to reinstate on "the motion of the State to *nolle pros* the charges against the defendant."

**II.    Second Action**

On August 15, 2015, Tucker was again charged with two counts of first degree murder, this time via complaint in case 15-CF-937.

On November 9, 2015, Tucker filed a motion to dismiss for a violation of his

---

[1] This summary of the facts is derived from the detailed description by the Illinois Appellate Court, Fifth District, in its Rule 23 Order affirming there was no violation of Tucker's constitutional right to a speedy trial (Doc. 16-4) (*People v. Tucker*, No. 2019 IL App (5th) 160280-U, November 8, 2019). The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Tucker has not done. 28 U.S.C. § 2254(e).

constitutional speedy-trial right attaching several documents from the original proceeding in 10-CF-598. Defense counsel conveyed his client's "firm demand for trial in 2014" and voiced his opinion that the leave to reinstate was a continuance tactic. Between the dismissal of the first case and charging of the second case, the state corrected mistakes identified in the earlier proceeding including testing the evidence and obtaining cooperation from a key witness.

Although defendant had been in custody for 1344 days before the 2014 trial date and subsequent dismissal, the case had been continued at least 16 times, all at the request or on motion of defense. The State contended that the case was "around day 58 or 59 of the speedy trial counter."

Kristi Flint testified at the motion hearing and advised she worked as a prosecutor in the violent crime division of the State's Attorney's Office in St. Clair County from March 2013 to August 31, 2014. She took over the handling of 10-CF-598 and appeared at a case management conference in June 2013. At that time, both parties requested additional time to prepare for trial so it was continued to February 24, 2014. In January 2014, Flint began to "ramp up preparations" for the trial. In February 2014, Allard was assigned as second chair. Flint and Allard discussed several shortcomings with the case, including reluctant eyewitnesses and additional scientific testing.

Flint indicated that when she filed the motion to dismiss, she intended to refile charges, not reinstate the case. She also notified defense counsel of her intention to file the motion to dismiss and noted that Tucker had not previously filed a speedy trial demand. Flint was concerned about proceeding because she knew they "only got

one bite at the apple."

Jon Allard also testified and advised he had been with the State's Attorney's Office since 1996 but was only assigned to Tucker's case shortly before trial. Allard noticed several "red flags" and did not feel the case was ready to proceed to trial. The State claimed it had an ethical obligation to release defendant once it determined it could not make its case. They denied attempting to manipulate the court's docket and denied dismissing the case to evade speedy-trial rights, which had not yet been asserted.

On April 16, 2016, the circuit court issued its findings and written order, determining that following the dismissal of the original charges against Tucker, "formal prosecution no longer existed; therefore, the demand for speedy trial had no effect." The court applied the four-factor test set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) to determine whether there was a violation of Tucker's constitutional speedy-trial right. In doing so, the court found that the 5 years between Tucker's arrest and trial was presumptively prejudicial, so it considered the remaining factors.

The court found the reasons for the delay were neither deliberate nor negligent by the State. It also noted that the original proceeding was continued twelve (12) times on Tucker's motion, twice by agreement and twice by the court. Additionally, defendant did not assert his right to speedy trial until the State sought to dismiss the charges. The court determined there was no evidence that Tucker's right to fair trial was affected or that he suffered prejudice.

The court also considered whether the delay violated Tucker's constitutional right to due process and cited *People v. Sanders,* 407 N.E.2d 951 (Ill. App. 1st Dist.

1980), to determine if the delay "caused substantial prejudice to the defendant's right to a fair trial and was an intentional device to gain a tactical advantage over the accused. Although the court found that there was intentional maneuvering by the State, Tucker failed to establish his right to a fair trial so the court denied defendant's motion to dismiss for violation of speedy trial rights.

On June 27, 2016, the State dismissed the criminal indictment and filed a criminal information charging defendant with one count of first-degree murder for the shooting death of Moore. Defendant waived his right to a jury trial. A stipulated bench trial was held and Tucker ("Tucker") was found guilty of one count of first-degree murder in St. Clair County, Illinois. He was then sentenced to twenty (20) years in the Illinois Department of Corrections, to be served at 100 percent pursuant to truth-in-sentencing.

### *Postconviction Proceedings*

On appeal, Tucker only raised his constitutional speedy-trial claim (Doc. 16-1). Applying the four-factor test set forth in *Barker*, 407 U.S. at 530, the appellate court found no violation and affirmed the circuit court decision (Doc. 16-4; *People v. Tucker*, No. 2019 IL App (5th) 160280-U).

Tucker next sought leave to appeal (PLA) to the Illinois Supreme Court, again raising the constitutional speedy-trial claims (Doc. 16-5; *People v. Tucker,* No. 125630). The Illinois Supreme Court denied the PLA on March 25, 2020 (Doc. 16-6; *People v. Tucker*, 144 N.E.3d 1179 (Table)(2020).

This habeas corpus action followed.

LAW APPLICABLE TO SECTION 2254 PETITION

1.  **Substantive Law**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through

appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). (internal citations omitted).

2.  **Timeliness, Exhaustion and Procedural Default**

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v.*

*Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see also 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, petitioners such as Tucker must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.*

Austin concedes that Tucker has exhausted his state court remedies (Doc. 15, p. 8). He does not contest Tucker's assertion that the habeas Petition was timely filed; however, he does assert that one ground for relief is procedurally defaulted (*Id.*).

## ANALYSIS

A habeas court must determine whether the state court's decision on the issue at hand was contrary to or an unreasonable application of federal law or amounted to an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In doing so, the court reviews the decision of the last state court to rule on the merits of the claim raised in the habeas petition. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

### I.     Ineffective Assistance of Counsel

Tucker raises two separate claims of ineffective assistance of counsel (Doc. 1). First, Tucker asserts that trial counsel rendered ineffective assistance of counsel (Doc.

1, pp. 4-8). Specifically, Tucker claims that his counsel in original case of 10-CF-598, Lyndon Evanko, failed to have him transported to court in three (3) years and failed to assert his client's right to a speedy trial. Second, Tucker asserts that he received ineffective assistance of appellant [*sic*] counsel, Jordan Cohen, for also not raising the issue of sitting in the St. Clair County Jail for three (3) years in his appeal.

### A. Applicable Law

In general, to prevail on a claim for ineffective assistance of counsel, a petitioner must meet the two-pronged *Strickland* test and establish that "(1) his counsel's performance fell below an objective standard of reasonableness; and, (2) that his deficient performance so prejudiced his defense that he was deprived of a fair trial." *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (*citing Strickland v. Washington*, 466 U.S. 668, 688-94 (1984)). Stated another way, under the *Strickland* test the defendant must show that his counsel's actions were not supported by a reasonable strategy, and that the error was prejudicial. *Massaro*, 538 U.S. at 501.

The first prong of the Strickland test, classified as the "performance prong," calls for a defendant to direct the Court to specific acts or omissions forming the basis of his claim. *Trevino*, 60 F.3d at 338. The Court then must determine whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id*. While making this assessment, the Court must be mindful of the strong presumption that counsel's performance was reasonable. *Accord Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

In evaluating an ineffective assistance claim, a court does not always need to analyze both prongs because failure to satisfy either prong is fatal to the claim. *United*

*States v. Ebbole,* 8 F.3d 530, 533 (7th Cir. 1993) *citing Strickland,* 466 U.S. at 697. In other words, if the defendant fails to satisfy the first prong, there is no need to address the second prong.

If, however, the defendant satisfies the performance prong, he must then meet the "prejudice prong" of *Strickland*. *Ebbole,* 8 F.3d at 533. This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Emezuo v. United States*, 357 F.3d 703, 707-08 (7th Cir. 2004) *citing Strickland*, 466 U.S. 52 (1985).

A. **Discussion**

Tucker did not raise ineffective assistance of counsel claims, either with the circuit court in any postconviction motions or with the appellate court. A federal court cannot address the merits of constitutional claims brought in a petition for habeas corpus relief unless the state courts have had a full and fair opportunity to raise them. *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir. 1991). Indeed, before considering a petition for habeas corpus on its merits, a district court must make two inquiries: (1) whether the petitioner exhausted all available state remedies; and, (2) whether the petitioner raised all his claims during the course of the state proceedings. *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir. 1988), *cert. denied,* 490 U.S. 109, 125, 126 n. 28, If the answer to either of these inquiries is "no," the petition is barred either for failure to exhaust state remedies or for a procedural default. *Id.*

Because Tucker did not raise his claim(s) of ineffective assistance of counsel in any proceeding in the Illinois courts, he is procedurally defaulted from doing so. *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir. 1990). He has

not demonstrated adequate cause to excuse his failure to raise the claim in state court nor show any prejudice resulting from the default. *Wainright v. Sykes,* 433 U.S. 72, 87 (1977). As such, he has waived that claim for purposes of federal habeas review. *Zellers v. Duckworth,* 763 F.2d 250, 252 (7th Cir.); *cert. denied,* 474 U.S. 952 (1985).

Accordingly, Tucker's petition for writ of habeas corpus will be denied with respect to the claims of ineffective assistance of counsel raised in the first two arguments.

### B. Speedy Trial Violation

Tucker asserts that the numerous delays in his prosecution including the 43-month delay from indictment to dismissal in 10-CF-598, the 18 month delay between the dismissal of 10-CF-598 and complaint in 15-CF-937, and the 10 month delay from the complaint to plea in 15-CF-937, all contributed to a violation of his constitutional right to a speedy-trial (Doc. 1, pp. 8-17).

### A. Applicable Law

A speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution.[2] U.S. Const. amend. VI. It is a fundamental right imposed by the Due Process Clause of the Fourteenth Amendment on the States. *Klopfer v. State of N.C.,* 386 U.S. 213, 223 (1967). Illinois courts have long recognized a due process speedy trial right. Ill. Const. 1970, art. I, § 8; *People v. Crane,* 743 N.E.2d 555 (2001), *citing Barker v. Wingo*, 407 U.S. 514 (1972). The *Barker* factors consider: (1) the length of the delay; (2) the reasons for the delay; (3) petitioner's assertion of his right; and, (4) the prejudice, if any, to petitioner. 407 U.S. at 530.

---

[2] The Sixth Amendment provides in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …". U.S. Const. amend. VI.

## B. Discussion

The appellate court held that Tucker's Sixth Amendment right to a speedy trial was not violated. With respect to the speedy trial claim, the Illinois appellate court correctly identified *Barker v. Wingo* as the applicable Supreme Court precedent, and also and went through the four factors. The state court also cited *People v. Crane,* which notes that the *Barker* inquiry is triggered by a delay that is "presumptively prejudicial." 743 N.E.2d at 563.

The Appellate Court correctly held that the almost 43-month delay was presumptively prejudicial and was sufficient to trigger application of the remaining *Barker* factors (Doc. 16-4). The court then looked at the reasons behind the delay and noted that most of the delay during the period initial 43 months was attributable to Tucker.[3] The court did not find bad faith by the state in its dismissal and so did not consider the 18 month delay between the first and second cases in their analysis of the speedy trial argument. As for the third factor, Tucker did not assert his speedy trial claim until the day of dismissal, 43 months after being charged and did not file his claim until 3 months after arrest. With respect to any prejudice suffered by defendant, the appellate court noted that he did not dispute that the majority of the delays were attributed to him. As for claimed anxiety, it is present in almost every criminal case and Tucker failed to specify how his ability to prepare his defense was impaired or adversely affected by any delays.

Tucker has not demonstrated that the appellate court's opinion was an unreasonable application of Supreme Court precedent. Although Tucker argues that

---

[3] 12 or 16 continuances were at Tucker's request, 2 were on joint motion, and 2 were at the request of the State.

he wanted a speedy trial and did not agree with the repeated requests for continuances, it is well-settled that delay caused by defense counsel is attributable to the defendant even when defendant does not agree. *Vermont v. Brillon,* 556 U.S. 81 (2009). Tucker also argues that he was prejudiced by the time spent in custody, but he does not show how he was prejudiced.

This Court concludes that the Appellate Court's decision on Tucker's speedy trial claim was not an unreasonable application of Supreme Court law. The weighing of the *Barker* factors was reasonable. Consequently, this claim is also denied.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Tucker need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the certificate, a habeas petitioner may request a certificate of appealability from the court of appeals. FED. R. APP. P. 22(b)(1)-(3).

For the foregoing reasons, the Court has determined that Petitioner has not

Case 3:20-cv-00585-SPM Document 22 Filed 04/16/21 Page 14 of 15 Page ID #401

stated any grounds for habeas relief. Further, no reasonable jurist would find it debatable whether this Court's rulings were correct. As such, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a certificate of appealability.

CONCLUSION

Eric Tucker's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly.

If Tucker wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Tucker plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Tucker does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Kerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED: April 16, 2021**

                                                           *s/Stephen P. McGlynn*
                                                          **STEPHEN P. McGLYNN**
                                                          **United States District Judge**